Dennis **HEIZER,** Personal Representative of the Estate of James Heizer, Deceased, Appellant,

v.

**CINCINNATI, NEW ORLEANS AND PACIFIC RAILWAY CO.;** Norfolk Southern Railway Co.; and CSX Transportation, Inc., Appellees.

No. 2003–CA–000922–MR.

Court of Appeals of Kentucky.

Aug. 6, 2004.

Discretionary Review Denied by Supreme Court Oct. 12, 2005.

John D. Roven, Roven, Kaplan & Wells, L.L.P., Houston, TX, Steven T. McMurtry, Ft. Mitchell, KY, for appellant.

Kendra L. Smith, Burns, White & Hickton, LLC, Pittsburgh, PA, James F. Brockman, Lindhorst & Dreidame, Cincinnati, OH, for appellees.

Before COMBS, Chief Judge; TACKETT and VANMETER, Judges.

## OPINION

TACKETT, Judge.

Dennis Heizer (hereinafter referred to as "Dennis"), the personal representative of the estate of James Heizer (hereinafter referred to as "James"), appeals from an order entered on April 16, 2003 by the Campbell Circuit Court that granted summary judgment in favor of the appellees,

Cincinnati, New Orleans and Pacific Railway Company; CSX Transportation, Inc.; and Norfolk Southern Railway Company (hereinafter referred to as "the Railroads").

On appeal, Dennis argues that the trial court erred when it found that James, the decedent, possessed actual knowledge that his cancer was work-related and that the trial court erred when it found as a matter of law that James possessed constructive knowledge that his cancer was work-related. Dennis argues that the trial court erred when it ruled that the accrual of a survival claim pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51–60 (hereinafter referred to as "FELA"), could not be tolled by mental incapacity. Lastly, Dennis argues that the trial court erred when it found the three-year statute of limitations, set forth in FELA, 45 U.S.C. § 56, barred the wrongful death claim filed on behalf of James's children. Finding that the trial court did not err regarding the dismissal of the survival action, this Court affirms in part the trial court's order of April 16, 2003. However, finding that the trial court did err regarding the dismissal of the wrongful death claim, this Court reverses in part the trial court's order and remands with instructions.

## FACTS

At various times in the 1940's and 1950's, James Heizer worked either for the Railroads or for their predecessor companies. On December 26, 1998, James died from mesothelioma, a cancer which is almost exclusively connected to prolonged exposure to asbestos. On January 19, 2001, Dennis Heizer, one of James's sons and the executor of his estate, filed, pursuant to FELA, a survival action and a wrongful death claim against the Railroads alleging that they had negligently exposed James to asbestos while he had worked for them.

On December 19, 2002, the Railroads collectively filed a motion for summary judgment. They argued that the three-year statute of limitations found in 45 U.S.C. § 56 barred both the survival action and the wrongful death claim. The Railroads argued that the discovery rule applied to the FELA claims and argued that James either actually knew his mesothelioma was work-related or should have reasonably known it was work-related by January of 1997. The trial court agreed and found that, no later than January of 1997, James possessed actual knowledge that he had mesothelioma and it was work-related. The trial court also concluded that, no later than January of 1997, James possessed constructive knowledge that he had cancer and it was work-related. Thus, the trial court granted summary judgment in favor of the Railroads. Dennis then appealed to this Court.

## ACTUAL KNOWLEDGE

■ Dennis argues that the Campbell Circuit Court erred when it found that James had actual knowledge that his mesothelioma was occupationally related. Further, he contends the trial court erred when it found that James had acquired this knowledge in January of 1997 and when it concluded that the three-year statute of limitations had begun to run in January of 1997. In support of this position, Dennis argues that the trial court not only ignored the testimony contained in his deposition but also ignored the affidavits of his brothers, David Heizer (hereinafter referred to as "David") and R.J. Heizer (hereinafter referred to as "R.J."). In David's affidavit, he stated that he accompanied James to a Veteran's Administration medical facility on two different occasions when biopsies were performed. The first biopsy was performed in 1995, and

the result was negative for cancer. The second was performed in November of 1996, and the result indicated cancer. According to David's affidavit, James was told that the second biopsy showed that he had cancer. Later, David accompanied James to a follow-up meeting in January of 1997 where James was told that the cancer was incurable. David stated in his affidavit that he never heard anyone mention asbestos to James. R.J. also stated in his affidavit that no one ever mentioned asbestos to James. In addition, R.J. stated that James always referred to his illness as lung cancer not mesothelioma. Furthermore, R.J. stated that, after James's death, a nurse mentioned asbestos to the family for the first time and suggested that they should consider an autopsy. According to R.J.'s affidavit, an autopsy was performed and it revealed the presence of asbestos in James's lungs. Dennis contends the family learned at that time that James's mesothelioma was caused by his past exposure to asbestos.

Dennis also argues that the medical documents found in the record do not indicate that any medical personnel ever explained to James the link between asbestos exposure and mesothelioma. According to Dennis, the record contains abundant evidence that James never knew that his mesothelioma was related to asbestos.

This Court has previously stated that, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. There is no requirement that the appellate court defer to the trial court since factual findings are not at issue." (Citations omitted.) *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996).

■ This Court agrees with Dennis that the trial court erred when it found that James possessed actual knowledge regarding the causal connection between his former occupation and his cancer. The Railroads rely heavily on a discharge summary from December 9, 1996 in which a physician stated that James most likely suffered from mesothelioma due to his past exposure to asbestos. However, neither this medical document nor any other found in the record contains any evidence that any medical personnel ever explained to James the connection between asbestos exposure and mesothelioma. Nor does the record contain any evidence that James ever read this discharge summary or any of the other medical documents contained in the record. However, while the trial court erred, this Court concludes it was harmless error since James possessed constructive knowledge as discussed below.

## CONSTRUCTIVE KNOWLEDGE

Dennis argues that the Campbell Circuit Court erred when it concluded that James possessed constructive knowledge that his mesothelioma was work-related and that James should have known this no later than January of 1997. In support of this position, Dennis argues that both James and the family had always assumed that James's cancer was caused by smoking. Dennis contends that R.J.'s affidavit supports this contention since R.J. stated that James always referred to his disease as lung cancer not mesothelioma.

Furthermore, Dennis cites *Bath Iron Works Corp. v. U.S. Dept. of Labor*, 336 F.3d 51 (1st Cir.2003) a non-FELA mesothelioma case. In *Bath Iron Works*, decedent, a retired longshoreman had contracted anaplastic mesothelioma after prolonged exposure to asbestos. *Id.* at 53, 58. The decedent's wife discovered three years after his death that his can-

cer was related to asbestos exposure and filed suit. *Id.* at 57. The employer argued that the wife's claim was barred by the two-year statute of limitations set forth in 33 U.S.C. § 913 since she failed to exercise reasonable diligence and failed to discover the cause of her husband's cancer. The 1st Circuit stated that the word "mesothelioma" conveyed no special meaning to decedent's wife other than what she already knew; i.e., cancer. *Id.* at 58. Furthermore, because of the remoteness of decedent's exposure compared to the manifestation of the disease, there was no logical reason for his wife to exercise due diligence earlier. *Id.* at 59.

Dennis also cites *Shesler v. Consolidated Rail Corp.*, 151 Ohio App.3d 462, 784 N.E.2d 725 (2003). In *Shesler*, the Ohio Appellate Court determined that the plaintiff was under no duty to know what "pleural plaques" were. Furthermore, the plaintiff did not learn of the relationship between the plaques and asbestos until 1998 when a specialist explained the causal connection to plaintiff.

Dennis argues there is no evidence in the record that James "constructively knew" of the causal connection between his mesothelioma and his exposure to asbestos. Dennis contends there is no evidence in the record to conclude that the word "mesothelioma" held any special meaning for James other than "lung cancer".

■ In 45 U.S.C. § 59, Congress provided that an injured employee's cause of action would survive the employee's death and that the employee's personal representative may maintain a survival action for the benefit of the employee's surviving spouse and children. Congress set forth in 45 U.S.C. § 56 that "[n]o action shall be maintained ... unless commenced within three years from the day the cause of action accrued." Such an action accrues

when the injured employee knows about both the injury and its cause. *Fries v. Chicago & Northwestern Transportation Company*, 909 F.2d 1092, 1094 (1990) citing *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). However, when the exact date of an injury is indeterminate because it was the result of continual exposure to a harmful substance, such as in the instant case, the injured employee's action accrues when the injury manifests itself. *Id.*

For the purpose of the three-year statute of limitation set forth in 45 U.S.C. § 56, an injured employee's survival action accrues,

> when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause. Both components require an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause. Moreover, the injured plaintiff need not be certain which cause, if many are possible, is the governing cause but only need know or have reason to know of a potential cause. [T]his rule imposes on injured plaintiffs an affirmative duty to investigate the potential cause of his injury[.] (Citations omitted.)

*Id.* at 1095.

■ Dennis concedes that James knew in January of 1997 that he had been diagnosed with mesothelioma. There can be no question that James possessed actual knowledge that he had an injury. The next question is: when should James have known the essential facts regarding the cause of his illness? Once he was diagnosed, James had an affirmative duty to exercise reasonable diligence to investigate the cause of his cancer. The record shows that James was preliminarily diagnosed

with mesothelioma in December of 1996 and an oncologist consulted with him concerning potential treatments. The record shows that James subsequently met with physicians in January of 1997. He was conclusively diagnosed with mesothelioma and told it was incurable. Despite this prognosis, the record shows that in March of 1997 James had sought treatment options from at least one other physician.

Given the record, this Court concludes that with the exercise of reasonable diligence, James should have known about the causal connection between his mesothelioma and his exposure to asbestos while working for the Railroads no earlier than December of 1996 but no later than March of 1997. The trial court determined that the cause of action accrued in January of 1997, and this Court agrees with that finding. This means that James's children had until January of 2000 to file their survival action before the statute of limitations barred it. However, Dennis did not file the survival action until January 19, 2001, after the three-year statute of limitations had run. Furthermore, he has failed to raise any genuine issue regarding the accrual of the survival action and the running of the statute of limitations. Thus, the trial court did not err when it concluded that James possessed constructive knowledge regarding the cause of his illness and did not err when it dismissed the survival action as barred by the statute of limitations.

## MENTAL DISABILITY

■ Dennis argues that the Campbell Circuit Court erred when it concluded that FELA's three-year statute of limitations was not tolled by a finding that James was mentally disabled. Dennis points out that the record contains medical documents that indicate that James had difficulties with his memory and reasoning abilities after suffering a stroke in the early 1990's.

In addition, in August of 1998, a few months prior to his death, James was admitted to St. Elizabeth South Hospital. Dennis points out that the admitting doctor noted that the nursing home in which James had been previously staying had stated that James had dementia. Also, Dennis calls attention to a patient transfer document that indicates that one month before James died, he had impaired memory and had periods of confusion. Dennis argues that the state of Arizona has determined that mental incompetency can toll the statute of limitation in a FELA action. *Brooks v. Southern Pacific Company,* Ariz., 105 Ariz. 442, 466 P.2d 736 (1970). He urges this Court to adopt Arizona's ruling and reverse the trial court.

While Dennis's position is not without merit, this Court declines to adopt it at this time. Even if this Court did, it would afford Dennis no relief. The record contains no evidence that James was mentally disabled at the time he was diagnosed with mesothelioma. In fact, the record indicates quite the opposite. In Dennis's own deposition, he paints a picture of James as a vibrant individual who was both mentally and physically active. Moreover, medical documents found in the record indicate that James was keenly interested in his health.

The record does indicate that approximately five months before his death, James may have experienced some mental difficulties. However, the record does not indicate whether such problems were so severe that they would justify tolling the statute of limitations. Even if they were, the statute would only have been tolled for approximately five months, extending it to June of 2000. Since Dennis filed the survival action in January of 2001, the statute of limitations would have still barred the survival action.

## WRONGFUL DEATH CLAIM

Dennis argues that the Campbell Circuit Court erred when it concluded that the wrongful death claim was barred by the three-year statute of limitations. The trial court held that the wrongful death claim was dependent on the viability of the survival action. Dennis points out that 45 U.S.C. § 51 established wrongful death actions for the benefit of the surviving spouse and children of a railway worker. Furthermore, the three-year statute of limitations for a wrongful death claim begins to run at the time of the worker's death. 45 U.S.C. § 51. While Dennis acknowledges that a FELA wrongful death claim is derivative of a survival claim, he cites both *Flynn v. New York, N.H. & H.R. Co.*, 283 U.S. 53, 51 S.Ct. 357, 75 L.Ed. 837 (1931) and *McGhee v. Chesapeake & Ohio Railroad Co.*, 173 F.Supp. 587 (W.D.Mich.1959) for the proposition that a FELA wrongful death claim is extinguished only when the three-year statute of limitations regarding the survival claim has run during the lifetime of the injured employee. Dennis points out that James died on December 26, 1998. Even if the three-year statute of limitations regarding the survival action had begun to run in January of 1997, James's claim had not expired by the time of his death. Dennis points out that he filed the wrongful death claim within three years of James's death.

■ This Court agrees. In *Michigan Central Railroad Company v. Vreeland*, 227 U.S. 59, 68, 33 S.Ct. 192, 195, 57 L.Ed. 417 (1913), the United States Supreme Court determined that the Federal Employers' Liability Act created a new cause of action for the wrongful death of an injured employee. This cause of action may be brought by the personal representative of the deceased employee for the benefit of the employee's surviving spouse

and children. *Id.*, 45 U.S.C. § 51. The Supreme Court held,

> [T]he foundation of the right of action is the original wrongful injury to the decedent, it has been generally held that the new action is a right dependent upon the existence of a right in the decedent immediately before his death to have maintained an action for his wrongful injury. (Citations omitted.)

*Michigan Central Railroad Company v. Vreeland, supra* at 70, 33 S.Ct. 192. The United States District Court for the Western District of Michigan stated the Supreme Court's holding more clearly,

> (1) that the Federal Employers' Liability Act, Title 45 U.S.C.A. § 51, et seq., establishes two separate and distinct causes of action; (2) that the statute of limitations found in § 56 of the cited statute does not apply to a claim for damages resulting from an occupational disease until the injured employee has some reason to discover the existence of the occupational disease; (3) that the personal representative of a decedent is barred from instituting an action for wrongful death because of the statute of limitations contained in § 56 only if such statutory three year period expires during the lifetime of the decedent[.]

*McGhee v. Chesapeake & O.R. Co.*, 173 F.Supp. 587, 590 (W.D.Mich.1959). In January of 1997, a FELA negligence action accrued in James's favor, although he never exercised his right to file such a claim. At that time, the three-year statute of limitations began to run. This means that immediately prior to his death in December of 1998, James possessed the right to file a FELA action against the Railroads. Since James still had this right at the time of his death, his children's right to bring a FELA wrongful death claim was not extinguished by James's death. They had three years from the day of James's

death, until December 26, 2001, to file such a claim against the Railroads. Since Dennis filed the wrongful death claim on January 19, 2001, the three-year statute of limitations did not bar the claim. Thus, the trial court erred when it dismissed the wrongful death claim.

CONCLUSION

Therefore, for the foregoing reasons, this Court affirms in part the Campbell Circuit Court's order of April 16, 2003 to the extent that it dismissed the survival action. However, this Court reverses in part regarding the wrongful death claim; remands to the Campbell Circuit Court and orders the trial court to reinstate this claim for further proceedings not inconsistent with this opinion.

ALL CONCUR.